================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 186
Frank Paterno,
          Appellant,
       v.
Laser Spine Institute, et al.,
          Respondents.

          Timothy G. Griffin, for appellant.
          Joshua R. Cohen, for respondents.

RIVERA, J.:

          Plaintiff Frank Paterno appeals from the dismissal for

lack of personal jurisdiction of his medical malpractice action

against non-domiciliary defendants Laser Spine Institute (LSI),

and various LSI professionals.  We conclude that defendants'

- 1 -

contacts with New York are insufficient to confer long-arm jurisdiction under CPLR 302 (a) (1).  We further reject plaintiff's alternative basis for personal jurisdiction under CPLR 302 (a) (3) because he suffered his injuries outside the State.  Therefore, we affirm.

                                I.

          In May 2008, plaintiff was suffering from severe back pain.  While on the homepage of a well-known internet service provider plaintiff discovered an advertisement for LSI, a surgical facility specializing in spine surgery, with its home facility and principal place of business in Tampa, Florida. Plaintiff clicked on the LSI advertisement, and viewed a 5-minute video presentation of a testimonial from a former LSI patient and professional golfer, extolling LSI's medical services.  The advertisement appeared to hold out the promise of relief for plaintiff's back problems so he communicated with LSI by telephone and internet to inquire about possible surgical procedures to alleviate his pain. These would be the first of plaintiff's several contacts with LSI, which led to his eventual decision to undergo surgical procedures by LSI medical professionals in Florida.  Those surgeries are the underlying basis for plaintiff's action against defendants.

          After his initial inquiries in May 2008, plaintiff sought a medical assessment of his condition by LSI, and sent to

LSI's Florida facility certain magnetic resonance imaging (MRI) films of his back.  LSI then sent plaintiff an e-mail letter, describing preliminary surgical treatment recommendations and orders, based on its doctors' professional evaluation of the MRI. The letter made clear the recommendations and suggested procedures were not final, and that plaintiff would be "evaluated by [LSI] surgeons upon arrival so therefore these orders will be subject to change by the surgeon while in consultation."

According to plaintiff, on May 30, 2008, the same day that he received the letter, LSI informed him that there had been a cancellation, and plaintiff could take the open spot and have the surgery performed at a significant discount due to the short notice.  LSI offered a June 9, 2008 surgery date.

In preparation for his surgery plaintiff had several additional e-mail contacts with LSI from June 2nd through June 6th.  These communications were intended to address registration and payment issues, and to generally facilitate plaintiff's arrival at LSI's Florida facility.  For example, plaintiff sent his completed registration and private insurance forms, and engaged in correspondence with LSI related to payment arrangements to be made upon his arrival in Florida.  LSI sent plaintiff a list of hotels in Tampa that offered discounted rates to LSI patients.

Apart from these administrative matters, plaintiff forwarded to LSI his blood work, which had been completed in New

York.  He also attempted to schedule a conference call between his New York-based doctor, Dr. Dimatteo, and LSI defendant Dr. Perry. After plaintiff was unable to reach Dr. Perry, an LSI doctor called Dr. Dimatteo the following day and briefly discussed plaintiff's scheduled surgery.

On June 6th, plaintiff traveled from New York to Tampa, Florida, and on June 9th, he underwent surgery at the LSI facility, performed by defendant LSI surgeon Dr. Kevin Scott. Plaintiff experienced extreme pain following the surgery and complained to LSI staff who advised him that this was due to the procedure and could last for two weeks.  Plaintiff underwent a second surgical procedure at LSI on June 11th, this time performed by defendant LSI surgeon Dr. Vernon Morris. He again experienced severe pain after the surgery.

For two weeks following his return to New York on June 12th, plaintiff contacted the LSI physicians on a daily basis to discuss his medical status, and to complain about his post-operative pain. LSI doctors and staff addressed his request for pain medication by calling prescriptions into local pharmacies in plaintiff's home city, which he then filled.

In mid-July, plaintiff was still in severe pain and went to New York-based physicians to discuss his medical status and the results of the out-of-state surgeries.  He underwent an MRI, which according to one of his New York-based doctors revealed the same disc herniations the doctor had observed prior

to the surgery.  In response to plaintiff's request for consultation with LSI, LSI physicians held a conference call with this New York-based doctor to discuss plaintiff's condition.

After further telephone and e-mail communications with LSI, and after plaintiff demanded that LSI address his condition, plaintiff returned to Florida on August 6th where he underwent a third surgery, this time performed by defendant LSI surgeon Dr. Craig Wolff.  As before, plaintiff was in severe pain following the surgery, and as before only days after the procedure he returned to his home in New York State.

For approximately the next three months, until October 31, 2008, plaintiff claims to have communicated daily with LSI staff via text messages, e-mails and telephone calls.  He also spoke directly by telephone with defendant Dr. Wolff, regarding his back pain and headaches.  Dr. Wolff discussed ways to alleviate the pain, and ordered an MRI which was performed in New York.  Dr. Wolff also spoke by telephone with another of plaintiff's New York-based doctors concerning plaintiff's condition.  When plaintiff's condition did not improve, Dr. Wolff told him he could return to LSI for another surgical procedure to address what appeared to be fluid accumulation from a spinal dura leak.  LSI offered to fly plaintiff to Florida at LSI's expense. After several consultations with New York-based doctors, plaintiff underwent another surgery, but this time in New York, performed by a New York-based doctor not connected with LSI.

Plaintiff thereafter commenced this medical malpractice action in New York against LSI and several LSI doctors, including the surgeons who operated on him.  Defendants moved to dismiss for lack of personal jurisdiction pursuant to CPLR 3111 (a) (8), and Supreme Court granted the motion.

The Appellate Division affirmed in a split decision, concluding that the court lacked personal jurisdiction over LSI and the doctors because they were not transacting business in New York within the meaning of CPLR 302 (a) (1), and there was no personal jurisdiction under CPLR 302 (a) (3) because plaintiff's injury did not occur in New York. The two dissenting justices concluded that the contacts demonstrated the "purposeful creation of a continuing relationship" sufficient to establish jurisdiction over defendants under CPLR 302 (a)(1).


II.

Plaintiff argues that New York courts have personal jurisdiction over defendants under CPLR 302 (a) (1), based on their purposeful activity, as demonstrated by LSI's active solicitation of plaintiff to undergo surgery, and defendants' pre and post surgery contacts related to plaintiff's medical treatment, including e-mails, letters and the exchange of documents.  Plaintiff also contends New York courts have personal jurisdiction over defendants under CPLR 302 (a) (3) because

defendants committed a tortious act outside New York State which caused injury to him within New York.

Defendants argue that their contacts with plaintiff merely responded to his inquiries or constituted followup to the surgical procedures, and do not constitute transacting business in New York State within the meaning of the CPLR so as to confer personal jurisdiction over the defendants. Furthermore, they contend that because plaintiff's injuries occurred in Florida, his reliance on CPLR 302 (3) as an alternative basis of jurisdiction is without merit.  They also argue that plaintiff failed to effectuate proper service of process over all the LSI defendants.

CPLR 302 (a) (1) provides in relevant part:

"(a) Acts which are the basis of
jurisdiction. As to a cause of action arising
from any of the acts enumerated in this
section, a court may exercise personal
jurisdiction over any non domiciliary, ...,
who in person or through an agent:

1. transacts any business within the state or
contracts anywhere to supply goods or
services in the state ...."

(CPLR 302 [a] [1]).  Whether a non-domiciliary is transacting business within the meaning of 302 (a) (1) is a fact based determination, and requires a finding that the non-domiciliary's activities were purposeful and established "a substantial relationship between the transaction and the claim asserted" (Fischbarg v Doucet, 9 NY3d 375, 380 [2007], citing Duetsche Bank

Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71 [2006]).

Purposeful activities are volitional acts by which the non-

domiciliary "'avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and

protections of its laws'" (Fischbarg, 9 NY3d at 380, quoting

McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 382 [1967],

and citing Ford v Unity Hosp., 31 NY2d 464, 471 [1973]).  More

than limited contacts are required for purposeful activities

sufficient to establish that the non-domiciliary transacted

business in New York (see e.g. Ehrenfeld v Bin Mahfouz, 9 NY3d

501, 508 [2007]).

The lack of an in-state physical presence is not

dispositive of the question whether a non-domiciliary is

transacting business in New York.  For "[w]e have in the past

recognized CPLR 302 (a) (1) long-arm jurisdiction over commercial

actors[] using electronic and telephonic means to project

themselves into New York to conduct business transactions"

(Deutsche Bank Sec., Inc., 7 NY3d at 71 [holding that CPLR 302

(a) (1) conferred long-arm jurisdiction over out-of-state

institutional investor who called plaintiff, a New York

securities firm, to make a trade, and the suit arose from that

transaction], citing  Parke-Bernet Galleries v Franklyn, 26 NY2d

13, 308 [1970], and Ehrlich-Bober & Co., Inc. v Univ. of Houston,

49 NY2d 574 [1980]; see Fischbarg v Doucet, 9 NY3d 375 [2007]

[California defendants "transacted business" where they formed an

attorney-client relationship with plaintiff attorney in New York through numerous telephone calls, faxes, mail contacts, and e-mails]; Park-Bernet Galleries, 26 NY2d at 17-18 [California defendant who actively participated in live auction held in New York via telephone subject to jurisdiction under CPLR 302 (a) (1) in an action arising out of that auction]).

Regardless of whether by bricks and mortar structures, by conduct of individual actors, or by technological methods that permit business transactions and communications without the physical crossing of borders, a non-domiciliary transacts business when "'on his [or her] own initiative ... [the non-domiciliary] project[s] himself [or herself]' into this state to engage in a 'sustained and substantial transaction of business'" (Fischbarg, 9 NY3d at 382, quoting Parke-Bernet Galleries, 26 NY2d at 17). Thus, where the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship, a non-domiciliary can be said to transact business within the meaning of 302 (a) (1) (Fischbarg, 9 NY3d at 381).

Plaintiff contends that the totality of defendants's contacts establish that it conducted business in New York through its solicitation and several communications related to LSI's medical treatment of plaintiff.  We disagree.  In order to satisfy "'the overriding criterion' necessary to establish a transaction of business" within the meaning of CPLR 302 (a) (1),

a non-domiciliary must commit an act by which it "purposefully avails itself of the privilege of conducting activities within [New York]" (see Ehrenfeld, 9 NY3d at 508, citing McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 382 [1967], and Deutsche Bank Sec., Inc., 7 NY3d 65, 71 [2006]).  Plaintiff here admits that he was the party who sought out and initiated contact with defendants after viewing LSI's website.  According to plaintiff, that website informed viewers about LSI medical services and its professional staff.  However, he has not asserted that it permitted direct interaction for online registration, or that it allowed for online purchase of LSI services (see Halas v. Dick's Sporting Goods, 105 AD3d 1411, 1412 [4th Dept 2013]; Murphy v. Cirrus Design Corp., 38 Misc 3d 1227(A) [Sup Ct, Erie County 2013]; Citigroup Inc. v. City Holding Co., 97 F Supp 2d 549, 565 [SDNY 2000]).  Passive websites, such as the LSI website, which merely impart information without permitting a business transaction, are generally insufficient to establish personal jurisdiction (Grimaldi v Guinn, 72 AD3d 37, 48 [2d Dept 2010]; see Benifits By Design Corp. v Contractor Mgmt. Servs., LLC, 75 AD3d 826, 829 [3d Dept 2010]; Am. Homecare Fed'n, Inc. v. Paragon Scientific Corp., 27 F Supp 2d 109, 114 [D Conn 1998]; Edberg v Neogen Corp., 17 F Supp 2d 104, 114 [D Conn 1998]; Boris v. Bock Water Heaters, Inc., 3 Misc 3d 835, 840 [Sup Ct, Suffolk County 2004]; see also Morilla v Laser Spine Inst., LLC, 2010 WL 3258312, *5 [DNJ Aug 16, 2010, No. 2:10-CV-01882 (WHW)] [finding

LSI website containing "only information and a generic contact information input form" passive and insufficient to establish personal jurisdiction]).  Thus, as plaintiff concedes, the mere fact that he viewed LSI's website in New York is insufficient to establish CPLR 302(a)(1) personal jurisdiction over defendants.

Plaintiff argues, however, that LSI did more than just post an online advertisement.  He alleges that over months, there were several telephone calls and e-mail communications between plaintiff and LSI representatives, that he sent MRIs and blood work to LSI, and that LSI sent prescriptions to his New York-based pharmacies.  To the extent plaintiff argues that by sheer volume of contacts, defendants are subject to personal jurisdiction in New York, we disagree.  As we have stated it is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis (Licci v Lebanese Can. Bank, 20 NY3d 327, 338 [2012]; see also Fischbarg, 9 NY3d at 380).

Turning to the content and "quality" of defendants' contacts with plaintiff, it is apparent that they were responsive in nature, and not the type of interactions that demonstrate the purposeful availment necessary to confer personal jurisdiction over these out-of-state defendants.  After plaintiff initially sought out LSI, LSI responded with information designed to assist plaintiff in deciding whether to arrange for LSI medical services in Florida.  For example, after plaintiff sent his MRI for

evaluation, LSI sent him a letter setting forth a preliminary evaluation and treatment recommendations.

Once plaintiff confirmed his interest, and the June 9, 2008 surgery date was set, he fully engaged with defendants in order to ensure that all pre-surgical matters were completed. Plaintiff filled out and returned the insurance forms and attempted to negotiate payment arrangements; he arranged for his travel and lodging; he completed and sent LSI the necessary registration forms; he ensured that his bloodwork was sent to LSI before his arrival in Florida; and he requested that an LSI doctor speak with his New York-based doctors concerning the impending surgery at the LSI facility. As part of the preparation for plaintiff's arrival, these communications served the convenience of plaintiff (see Milliken v Holst, 205 AD2d 508, 510 [2d Dept 1994]), and fail to establish that defendants "avail[ed] [themselves] of the privilege of conducting activities within the forum State" (see Fischbarg, 9 NY3d at 380, quoting McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 382 [1967], and citing Ford v Unity Hosp., 31 NY2d 464, 471 [1973]).

Plaintiff urges us to consider the contacts between plaintiff and LSI once he returned to New York on June 9th, after the first two Florida surgeries. Our long-arm statute requires that the cause of action arise from the non-domiciliary's actions that constitute transaction of business. "There must be a substantial relationship between the transaction and the claim

asserted" (Fischbarg, 9 NY3d at 380). Here, plaintiff's claim is based on the June and August surgeries in Florida. Contacts after this date cannot be the basis to establish defendant's relationship with New York because they do not serve as the basis for the underlying medical malpractice claim (see Harlow v Children's Hosp., 432 F 3d 50, 62 [1st Cir 2005] [in most cases, where the cause of action must arise from the contacts, contacts after the cause of action arises will be irrelevant]). Further, defendants' contacts with New York at the behest of the plaintiff subsequent to the first two Florida surgeries but before the third cannot be used to demonstrate defendants actively projected themselves into New York (see Skrodzi v Marcello, 810 F Supp 2d 501, 510, 512 [EDNY 2011] [defendant's contacts with forum state arising from initial communication with plaintiff irrelevant for 301 (a) (1) jurisdictional analysis], citing Grimaldi, 72 AD3d at 51, and Zibiz Corp. v. FCN Tech. Solutions, 777 F Supp 2d 408, 421 [EDNY 2011]). In any event, even considering the defendants' contacts following the surgeries, they are similar in kind to the pre-surgery contacts and for the same reasons do not constitute the transaction of business required by CPLR 302(a)(1).

It is no longer unusual or difficult, as it may once have been, to travel across state lines in order to obtain health care from an out-of-state provider. It is also not unusual to expect follow up for out-of-state treatment. Given this reality, to find defendants' conduct here constitutes transacting business

within the meaning of CPLR 302 (a) (1), based on contacts before and after the surgeries, would set a precedent for almost limitless jurisdiction over out-of-state medical providers in future cases.  We do not interpret the expanse of CPLR 302 (a) (1) to be boundless in application.

The decision in Etra v Matta (61 NY2d 455 [1984]), supports our conclusion here.  In Etra the Court held that 302 (a) (1) did not confer personal jurisdiction over an out-of-state doctor in a medical malpractice action arising from that doctor's treatment of plaintiffs' decedent.  A Massachusetts doctor was solicited in Massachusetts by a New York patient and treated the patient in Massachusetts, but subsequently sent an experimental drug to New York and acted as a consultant to a New York doctor.  We held that those contacts were insufficient to constitute a transaction of business for purposes of 302 (a) (1).

The Appellate Division has also declined to extend long-arm jurisdiction under 302 (a) (1) to cover out-of-state medical centers where the contacts were limited or the injury occurred outside New York.  In O'Brien v Hackensack Univ. Med. Ctr. (305 AD2d 199 [1st Dept 2003]), a New Jersey hospital treated a New York resident in New Jersey, referred him to a New York hospital, prescribed him chemotherapy to be administered in New York, and regularly communicated with his New York doctors. According to the First Department, these "sporadic" contacts with New York were insufficient under 302 (a) (1) because they were

"not carried out from a permanent location in the state or by [the hospital's] agents or employees in the State." In Hermann v Sharon Hosp. (135 AD2d 682 [2d Dept 1987]), the Second Department held that 302 (a) (1) did not confer personal jurisdiction over a Connecticut hospital in a New York plaintiff's medical malpractice action arising from injuries sustained in the course of treatment at the hospital. The court reasoned that plaintiff had not shown his treatment arose from any transaction of business in New York where the hospital had no offices in New York and conducted its health-care activities solely in Connecticut, despite the fact that many of its doctors were licensed to practice in New York and many of its patients were New York residents.

Plaintiff argues that LSI has been found subject to personal jurisdiction by other courts, and urges us to follow suit. He relies on Henderson v Laser Spine Inst. LLC (815 F Supp 2d 352 [D Me 2011]) and Bond v Laser Spine Inst., LLC (2010 WL 3212480, 2010 US Dist LEXIS 82736 [ED Pa, Aug. 11, 2010, No. 10 1086]). These cases are distinguishable because they both involve more extensive contacts and personal jurisdiction statutes that are coextensive with the Federal Due Process Clause. In Henderson, unlike here, the court found LSI's website semi-interactive and nationwide print advertising contributed to the plaintiff's decision to contact LSI. In Bond, LSI had a Philadelphia "consult" office and took a more active role in that

plaintiff's post surgical treatment.  Moreover, these cases were decided based on statutes that, unlike 302 (a), permit an exercise of personal jurisdiction to the full extent of the Federal Due Process Clause (see Kreutter v McFadden Oil Corp. 71 NY2d 460, 471 [1988] [New York's long-arm statute "does not confer jurisdiction in every case where it is constitutionally permissible"]; cf. Morilla, 2010 WL 3258312 at *6 [finding alleged contacts based solely on LSI's passive website were insufficient to establish personal jurisdiction under the Federal Due Process Clause]).

We also reject plaintiff's alternative basis for personal jurisdiction asserted under CPLR 302 (a) (3).  This section provides that New York courts have personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state" (CPLR 302 [a] [3]). We disagree with plaintiff that the allegations in his complaint establish that his injury occurred in New York.  Rather, the situs of the injury in medical malpractice cases is the location of the original event which caused the injury, and not where a party experiences the consequences of such injury (Hermann, 135 AD2d at 683, citing McGowan v Smith, 52 NY2d 268, 273-274 [1981], and Kramer v Hotel Los Monteros SA, 57 AD2d 756 [2d Dept 1977]).  Here, the injury occurred in Tampa, Florida, where plaintiff underwent the surgeries that are the basis for his medical malpractice claim.

Therefore, 302(a)(3) cannot be a basis for personal jurisdiction over defendants.


                              III.

        Our determination that New York lacks personal jurisdiction over defendants, makes it unnecessary for us to consider whether plaintiff effectuated service of process over defendants.

        Accordingly, the Appellate Division order should be affirmed, with costs.


*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *


Order affirmed, with costs.  Opinion by Judge Rivera.  Chief Judge Lippman and Judges Graffeo, Read, Smith, Pigott and Abdus-Salaam concur.


Decided November 20, 2014