(April 13, 2017)

■ Coast to Coast Energy, Inc., et al., Appellants, et al., Plaintiffs, v Mark Gasarch et al., Respondents, et al., Defendants. [53 NYS3d 16]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered July 24, 2014, which, to the extent appealed from as limited by the briefs, granted defendant John Wampler's motion to dismiss the third amended complaint in its entirety, on jurisdictional grounds, and granted the motion of defendants Mark Gasarch and Petro-Suisse Limited to dismiss plaintiffs' causes of action for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, unjust enrichment, and plaintiffs' demand for punitive damages, and dismissed the fraud cause of action only insofar as asserted by plaintiffs Mark Gonsalves and the Coast to Coast plaintiffs, affirmed, without costs.

Pursuant to CPLR 302 (a) (1) a New York court may exercise personal jurisdiction over a nondomiciliary if the nondomiciliary has purposefully transacted business within the state and there is "a substantial relationship between the transaction and the claim asserted" (*Paterno v Laser Spine Inst.*, 24 NY3d 370, 376 [2014] [internal quotation marks omitted]). "Purposeful activities are volitional acts by which the non-domiciliary avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (*id.* [internal quotation marks omitted]). "More than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business in New York" (*id.*).

On a motion to dismiss pursuant to CPLR 3211 (a) (8), the plaintiff has the burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate jurisdiction (*see Fischbarg v Doucet*, 9 NY3d 375, 381 n 5 [2007]; *Copp v Ramirez*, 62 AD3d 23, 28 [1st Dept 2009], *lv denied* 12 NY3d 711 [2009]). Here, plaintiffs failed to carry their burden in pleading purposeful activities in New York by defendant John Wampler, allegedly a resident of Switzerland and Texas, sufficient to establish long-arm jurisdiction pursuant to CPLR 302 (a) (1).

The dissent would hold that in the third amended complaint plaintiffs adequately pleaded jurisdiction under CPLR 302 (a) (1) based on allegations that Wampler "transacted" business in New York through his agents, defendants Mark Gasarch and Petro-Suisse Limited (PSNY).

To establish that a defendant acted through an agent, a plaintiff must "convince the court that [the New York actors]

engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with the knowledge and consent of [the defendant] and that [the defendant] exercised some control over [the New York actors]" (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]). "[T]o make a prima facie showing of 'control,' a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation" (*Northern Val. Partners, LLC v Jenkins*, 23 Misc 3d 1112[A], 2009 NY Slip Op 50721[U], *4 [Sup Ct, NY County 2009], quoting *Karabu Corp. v Gitner*, 16 F Supp 2d 319, 324 [SD NY 1998]; *see also Polansky v Gelrod*, 20 AD3d 663, 664 [3d Dept 2005]).

The dissent contends that the third amended complaint satisfies these principles by virtue of plaintiff's allegations that Wampler was in daily communication with PSNY concerning the subject oil exploration partnerships and drilling operations, that Wampler instructed Gasarch concerning distributions and "routinely" directed him to transfer funds, and that Gasarch acted for the benefit of and with the knowledge and consent of Wampler, who exercised "some control." However, Wampler's status as a principal of PSNY does not in and of itself confer jurisdiction. Plaintiffs failed to allege facts demonstrating that Wampler controlled Gasarch and PSNY's activities sufficient to support New York jurisdiction, and plaintiff's vague, conclusory and unsubstantiated allegations do not suffice to establish long arm jurisdiction (*see Cotia [USA] Ltd. v Lynn Steel Corp.*, 134 AD3d 483, 484 [1st Dept 2015] ["Plaintiff has offered nothing but conclusory assertions to support long-arm jurisdiction under CPLR 302 (a) (1)"]; *Polansky v Gelrod*, 20 AD3d at 664 ["plaintiff offers only the conclusory allegation that Gelrod was their agent, with no supporting evidentiary facts establishing control"]).

The allegations that Gasarch only accessed PSNY's New York bank accounts at Wampler's direction were previously asserted upon information and belief in the second amended complaint, and plaintiffs offered no new facts or explanation for the change in the third amended complaint. Although plaintiffs added an allegation that "according to bank records, Wampler would routinely direct Gasarch to withdraw investor funds from PSNY," they provided no details regarding any such bank records or how they might reflect Wampler's involvement, and did not attach the bank records as an exhibit to their complaint.

The allegation that Wampler was in daily communication with PSNY concerning the oil exploration partnerships and drilling operations is conclusory, and plaintiff failed to proffer any specific facts to demonstrate how or when Wampler participated in preparing the Private Placement Memoranda for the investments. Similarly, the allegation that Gasarch acted for benefit of and with knowledge and consent of Wampler, who exercised "some control" contains no detail as to what statements were made, when they were made, what contract they were made in regards to, and whether or not the alleged misrepresentations were relied upon in such a way that would imply liability.

The dissent also cites plaintiffs' allegations that Wampler personally solicited plaintiffs' investment in the funds during several visits to New York in 2006 and 2007. However, "the transitory presence of a corporate official" does not support jurisdiction (see Fischbarg v Doucet, 9 NY3d at 380) and plaintiffs do not explain how Wampler engaged in any tortious or actionable misconduct at these meetings that would subject him to jurisdiction in New York. There is no indication when the first two meetings took place, other than providing the year; there is no detail as to where the first meeting took place; it is not clear which drilling projects the meetings pertained to; and the allegations of Wampler's alleged misrepresentations are provided in only very general terms (see Mahtani v C. Ramon, 168 AD2d 371 [1st Dept 1990]). It is not alleged that Wampler negotiated with a party, and the center of gravity of the contract was in Trinidad and Tobago.*

Plaintiff-appellant Mark Gonsalves has not pleaded his reliance on the alleged misrepresentations, or injury, sufficient to support a claim for fraud, as he did not allege that he invested in the partnerships at issue (see Lama Holding Co. v Smith Barney, 88 NY2d 413, 421 [1996]). The Coast to Coast entities have not stated a claim for fraud, because they, too, have not alleged injury (id.).

---

* As the dissent observes, the Court of Appeals concluded in Fischbarg that defendants' retention and subsequent communications with plaintiff in New York established a continuing attorney-client relationship in this state and thereby constituted the transaction of business under CPLR 302 (a) (1). However, in Fischbarg the record established that defendants called Fischbarg, a New York attorney, in order to represent them in an action in Oregon, entered into a retainer agreement, and participated in that relationship via telephone calls, faxes and e-mails over many months. Thus, the Court found that defendants purposefully projected themselves into New York. In contrast, here plaintiffs rely on conclusory allegations and have not demonstrated that Wampler engaged in sustained and substantial business with plaintiffs in New York.

The causes of action for breach of fiduciary duty, unjust enrichment, and breach of the implied covenant of good faith and fair dealing were properly dismissed as duplicative of the breach of contract cause of action, which was sustained as against the defendants other than Wampler (*Feld v Apple Bank for Sav.*, 116 AD3d 549, 551 [1st Dept 2014], *lv denied* 23 NY3d 908 [2014]; *Ellington v Sony/ATV Music Publ. LLC*, 85 AD3d 438, 439 [1st Dept 2011]).

Plaintiffs have not alleged that defendants acted with the requisite "high degree of moral turpitude" to support their demand for punitive damages (*Hoeffner v Orrick, Herrington & Sutcliffe LLP*, 85 AD3d 457, 458 [1st Dept 2011] [internal quotation marks omitted]).

We have considered the parties' remaining arguments and find them unavailing. Concur—Tom, J.P., Mazzarelli, Andrias and Gesmer, JJ.

Manzanet-Daniels, J., dissents in part in a memorandum as follows: I disagree with the majority that the motion court properly dismissed the complaint in its entirety against defendant Wampler on jurisdictional grounds. In my view, plaintiff has sufficiently alleged that Wampler is subject to long-arm jurisdiction under CPLR 302 (a) (1).

"[A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" (CPLR 302 [a] [1]). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" (*Deutsche Bank Sec., Inc. v Montana Bd. of Invs.*, 7 NY3d 65, 71 [2006], *cert denied* 549 US 1095 [2006]; *Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467 [1988]).

The third amended complaint sufficiently alleges that Wampler "transacted" business through his New York agents PSNY and Gasarch. Plaintiffs allege that Wampler was in daily communication with PSNY's New York office concerning the subject oil exploration partnerships and the drilling operations of affiliated overseas entities. Plaintiffs allege that Wampler instructed Gasarch concerning account distributions and "routinely" directed Gasarch to withdraw investor funds from PSNY and transfer them to defendants' personal accounts. PSNY and Gasarch acted "for the benefit of and with the knowledge and consent of [the] defendant[ ] and that [defendant] exercised some control over [the agent] in the matter" so as to

subject Wampler to jurisdiction under the long-arm statute (*Kreutter*, 71 NY2d at 467).

The majority maintains that plaintiffs' allegations are conclusory and unsubstantiated. However, the majority fails to meaningfully distinguish the allegations in this case from those found to be sufficient in other cases involving the transaction of business through an agent within the meaning of the long-arm statute (*see e.g. Kreutter*, 71 NY2d 460 [Texas defendants which marketed oil investments through New York corporate agent transacted business within the meaning of the long-arm statute]; *Holmes v First Meridian Planning Corp.*, 155 AD2d 813 [3d Dept 1989] [Florida mortgage company transacted business through New York corporate agent alleged to have falsely represented the value of certain condominiums where the New York agent received commissions from the Florida company and solicited business for it by advising the plaintiffs of the availability of obtaining a mortgage from the Florida company]).

Wampler's argument that he is not an alter-ego of PSNY, while relevant to the issue of substantive liability, is not relevant to the issue of whether he transacted business through an agent so as to subject him to personal jurisdiction (*see Kreutter* at 469-470).

Further, plaintiffs allege that Wampler himself personally solicited plaintiffs' investment in the funds during several visits to New York in 2006 and 2007. Gonsalves alleges that Wampler met with him in New York in 2006 "to describe the oil wells to be drilled in Trinidad—while knowing that no such wells would ever be drilled." During this meeting, Wampler "pointed to the past 'success' of the drilling programs since 2003, the number of wells drilled, the amount of production, and the revenues earned as evidence of the program's viability and robustness." These representations were allegedly "false and deliberately contrived by Wampler" to induce Gonsalves and potential investors to invest in the Trinidad operations.

Gonsalves alleges that Wampler met with him in 2007 at PSNY's New York offices, to "describ[e] the quick profit from" Coast to Coast Energy, which Gonsalves and Wampler formed in 2005, as well as "the continued supply of new investors, and the time needed for fund raising [sic] to continue."

Plaintiffs also allege that Wampler and Gasarch met Russack at PSNY's New York offices in May 2005 "for the purpose of selling an interest in a drilling rig to Russack, as part of [the] oil equipment scheme." Wampler allegedly "pointed to the prior successes of the oil exploration partnerships as evidence

of the viability and legitimacy of the oil equipment investment, while knowing that such evidence was completely fabricated and false."

Plaintiffs sufficiently allege that Wampler "transacted business" within the meaning of the long-arm statute (*see e.g. Corporate Campaign v Local 7837, United Paperworkers Intl. Union*, 265 AD2d 274 [1st Dept 1999] [daily communication, together with twelve trips to New York by the defendant's representatives, subjected the defendant to long-arm jurisdiction]; *Urfirer v SB Bldrs., LLC*, 95 AD3d 1616, 1618 [3d Dept 2012] [allegations that the defendant extensively communicated with subcontractors electronically and via telephone and traveled to New York to supervise the project sufficient to withstand motion to dismiss]; *Stardust Dance Prods., Ltd. v Cruise Groups Intl., Inc.*, 63 AD3d 1262 [3d Dept 2009] [attendance at two meetings in 2007, during which the defendant was alleged to have solicited travelers for dance cruises by displaying promotional materials and responding to inquiries, raised a question concerning whether the defendant had transacted business within the meaning of the statute]). While the oil exploration partnerships may have been located in the Caribbean, the complaint alleges that Wampler met with investors in New York for the purposes of soliciting their participation in the venture, and to sell interests in a drilling rig as part of the alleged scheme. I would accordingly reverse the order appealed to the extent it dismissed the claims against Wampler.

The cases upon which the majority relies in finding otherwise are wholly inapposite, involving the failure to allege the requisite nexus between the transaction and the defendant's activities (*see Mahtani v C. Ramon*, 168 AD2d 371, 371 [1st Dept 1990] ["(v)ague references by plaintiff to discussions had in New York which could have taken place either before or long after the transaction complained of fail to demonstrate purposeful activity by the defendants in this State that was undertaken in connection with the transactions at issue"]), or an isolated shipment of goods to an out-of-state defendant who then failed to pay, the "classic instance in which personal jurisdiction is found *not* to exist" (*Cotia [USA] Ltd. v Lynn Steel Corp.*, 134 AD3d 483, 484 [1st Dept 2015] [internal quotation marks and citations omitted]). In *Fischbarg v Doucet* (9 NY3d 375 [2007]), another case cited by the majority, the Court of Appeals held that the retention of a New York attorney by a California plaintiff for purposes of litigating a case in Oregon

did in fact constitute the transaction of business within the meaning of the long-arm statute (*id*.).

The Decision and Order of this Court entered herein on January 26, 2017 (146 AD3d 654 [2017]) is hereby recalled and vacated (*see* 2017 NY Slip Op 70537[U] [2017] [decided simultaneously herewith]).