*Rosenblatt v. Coutts & Co. AG*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of September, two thousand eighteen.

PRESENT:

> GERARD E. LYNCH,
> SUSAN L. CARNEY,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

_____

MARVIN ROSENBLATT,

> *Plaintiff-Appellant,*

> v.                                      No. 17-2846

COUTTS & CO. AG,

> *Defendant-Appellee,*

ROYAL BANK OF SCOTLAND PLC,

> *Defendant.*

_____

FOR PLAINTIFF-APPELLANT:              ZACHARY TAYLOR (Robert Cohen, *on the brief*), Taylor & Cohen LLP, New York, NY.

FOR DEFENDANT-APPELLEE:            ROSS ERIC MORRISON (Dana Walsh
                                   Kumar, *on the brief*), Buckley Sandler LLP,
                                   New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 14, 2017, is **AFFIRMED**.

Plaintiff-appellant borrower Marvin Rosenblatt appeals from the judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) dismissing his breach of contract and related tort claims against defendant-appellee mortgage lender Coutts & Co. AG ("Coutts") for lack of personal jurisdiction.[1] The core inquiry in this appeal is whether the District Court appropriately concluded that Coutts, a now-defunct Swiss private bank, did not "transact any business" in New York within the meaning of that state's long-arm statute. We assume the parties' familiarity with the facts and the record of the prior proceedings, to which we refer here only as necessary to explain our decision to affirm the District Court's dismissal.

We review *de novo* a district court's decision under Federal Rule of Civil Procedure 12(b)(2) to dismiss a case for lack of personal jurisdiction. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). "If the [district] court chooses to rely on pleadings and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction over [the] defendant." *Id.* at 364. Because the District Court here did not hold an evidentiary hearing on jurisdictional matters, we "construe the pleadings and affidavits in plaintiff's favor." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). In a diversity action, whether a court has personal jurisdiction over a defendant "is determined by the law of the forum in which the court sits." *CutCo Indus.,* 806 F.2d at 365. New York law therefore controls our analysis in this case.

---

[1] The District Court similarly dismissed for lack of personal jurisdiction Rosenblatt's claims against defendant Royal Bank of Scotland PLC, but Rosenblatt does not appeal that dismissal.

Under the New York long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state." N.Y. C.P.L.R. 302(a)(1). The relevant inquiry thus has two components: "(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction."[2] *Licci v. Lebanese Canadian Bank, SAL* ("*Licci I*"), 673 F.3d 50, 60 (2d Cir. 2012) (internal quotation marks and alteration omitted); *see also D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 297 (2017).

The New York Court of Appeals has instructed that the "overriding criterion" in determining whether an entity "transacts any business" in New York within the meaning of the statute is whether the entity "purposefully avails itself of the privilege of conducting activities within New York." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014). Further, that court has explained, "it is not the quantity but the quality of the contacts that matters under [the] long-arm jurisdiction analysis." *Id.* at 378. The "totality of the circumstances" must be assessed in determining whether a defendant has "invoke[d] the benefits and protections of [New York's] laws." *Licci I*, 673 F.3d at 61–62 (internal quotation marks omitted).

We have previously identified four non-exclusive factors that bear on our determination in this regard. Those are:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [parties to that contract] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

---

[2] If a defendant's alleged conduct meets this test, we then determine whether the exercise of personal jurisdiction over that defendant comports with constitutional due process requirements. *See Licci I*, 673 F.3d at 60.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)) (considering factors in context of franchisor-franchisee contract relationship). Upon consideration of these factors and the totality of the circumstances here, we conclude that Coutts did not "transact any business" in New York within the meaning of the statute.

As to the first factor, an ongoing contractual relationship: although Coutts, through its loan and mortgage agreement, had a contractual relationship with Rosenblatt, the agreement concerned Rosenblatt not in his capacity as a resident of New York, but rather in his capacity as the owner of the mortgaged residence in Switzerland. Coutts accordingly addressed its account statements and other loan-related correspondence to Rosenblatt in Switzerland. It also debited mortgage payments from Rosenblatt's Swiss account. This factor therefore seems, at best, neutral. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (law firm in Puerto Rico that negotiated and prepared legal opinion for New York bank regarding security interest in Puerto Rican oil refinery did not transact business in New York).

Second, as to the negotiation and execution of the contract: Rosenblatt alleges that Coutts negotiated the initial terms of the loan agreement with him by phone and email, including while he was in New York, and argues that this factor therefore favors finding that Coutts "transacts business" in New York. Although engaging in digital communications and entering into agreements by phone may sometimes constitute transacting business in New York, *see, e.g., Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71–72 (2006), long-distance communication with a New York plaintiff does not require a conclusion that the defendant transacted business in New York, *see, e.g., Paterno*, 24 N.Y.3d at 379, and here we find countervailing factors: the loan agreement was negotiated and drafted by Coutts employees in Switzerland and physically executed by both parties in Switzerland. Rosenblatt does not allege that any Coutts employee ever visited him in New York.[3] *See Int'l Customs*

---

[3] Although Rosenblatt attached to his opposition to the motion to dismiss a press release issued by the U.S. Department of Justice stating that, between 2008 and 2015, Coutts representatives met with clients in the United States eleven times, *see* App'x 101, Rosenblatt does not allege that he ever received such a visit or that any of those visits concerned his mortgage. Thus, even if the activity described in the press release were

4

*Assocs. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261–62 (S.D.N.Y. 1995) (no personal jurisdiction in New York where contract with defendant was negotiated remotely with parties in different countries, but contract executed in Taiwan and substantial part of performance occurred in Taiwan), *aff'd*, 201 F.3d 431 (2d Cir. 1999) (summary order). Under these circumstances, the place of negotiation and execution of the contract weighs against concluding that Coutts transacted business in New York.

Third, the mortgage agreement contains an explicit choice-of-law clause identifying Swiss law as controlling. App'x 30. Its forum selection clause names Zurich as the "place of performance" and the "place [in which] legal proceedings" related to the contract are to be conducted. *Id.* These clauses, too, weigh against concluding that Coutts transacted business in New York. *Cf. Jim Beam Brands Co. v. Tequila Cuervo La Rojeña S.A. de C.V.*, 63 A.D.3d 575, 576 (N.Y. App. Div. 1st Dep't 2009) (choice-of-law clause identifying New York favors personal jurisdiction over defendant in New York).

Rosenblatt argues that the third *Sunward Electronics* factor weighs in favor of finding personal jurisdiction because Coutts invoked the protections of New York's laws in the mortgage agreement when it reserved the right to sue Rosenblatt "in any competent court at his domicile or in any other court of competent jurisdiction." App'x 30. Rosenblatt analogizes this clause to a choice-of-law clause, but, as discussed above, the contract contains an explicit choice-of-law clause that selects Swiss law. Moreover, the provision relating to forum conspicuously fails to grant *Rosenblatt* the right to sue in the jurisdiction of his domicile, and gives Coutts the right to sue Rosenblatt wherever his domicile might be at the time of suit—not specifically in New York. In any event, to whatever extent the provision may have *permitted* Coutts to have recourse to the New York courts, it never invoked that provision by filing any action in New York. Accordingly, reading the contract as whole, Coutts did not seek to invoke the benefits and protections of New York law in the agreement sufficiently to affect our analysis under the long-arm statute. *See McKee Elec. Co. v.*

---

sufficient to show that Coutts transacted some business in New York, we have no reason to believe that Rosenblatt's claims here arose out of that activity, as required by the second prong of the test. *See Licci I*, 673 F.3d at 60.

5

*Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967) (defendant must "purposefully avail[ ] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws").

Finally, the contract did not require either party to "send notices and payments into the forum state," *Sunward Elecs., Inc.*, 362 F.3d at 22. As mentioned above, Coutts addressed and directed statements regarding the loan's status to Rosenblatt at his address in Switzerland, although it also sent copies to Rosenblatt's New York address.[4] Further, as noted above, Coutts debited Rosenblatt's Swiss account to receive his payments. The fourth factor therefore weighs, although not as strongly as the second and third factors, against exercising personal jurisdiction over Coutts.

Although the *Sunward Electronics* factors are non-exclusive, the parties do not meaningfully raise additional factors that in their view should bear on the analysis. Rosenblatt references his long tenure as a banking client of Coutts's and the transfer of some securities from his Coutts bank account to a New York account in 2014, but he fails to relate these transactions to the purportedly breached mortgage loan agreement or to explain how these facts might influence our assessment of the court's jurisdiction over Coutts. As to the loan proceeds, they were paid to Rosenblatt's Coutts account, so any subsequent transfer to another bank account is only incidental to the loan agreement. The New York Court of Appeals has explained that a plaintiff must provide "an articulable nexus or substantial relationship between defendant's New York activities and the parties' contract, defendant's alleged breach thereof, and [plaintiff's] potential damages," *D&R Glob. Selections*, 29 N.Y.3d at 299, and Rosenblatt has failed to meet that requirement.[5]

* * *

---

[4] The loan agreement does not identify a designated address for the purpose of receiving communications about the mortgage.

[5] The analysis with respect to Rosenblatt's separate promissory estoppel claim is not materially different. The charity that Coutts allegedly promised to support was to have been based at Rosenblatt's Swiss property, and there is no allegation that the alleged promise was made in New York. That the trustees of the charity resided in New York has no more persuasive power than the fact, considered above with respect to the breach of contract claim, that Rosenblatt did so.

We have considered Rosenblatt's remaining arguments and find them to be without merit. Considering the totality of the circumstances and the factors discussed above, we conclude that Coutts did not "transact[ ] any business" in New York within the meaning of N.Y. C.P.L.R. 302(a)(1). The District Court was therefore correct to conclude that it lacked personal jurisdiction over Coutts. Accordingly, we **AFFIRM** the judgment of the District Court dismissing the complaint.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

7