**Safra v SNBNY Holdings Ltd.**

2024 NY Slip Op 31061(U)

March 28, 2024

Supreme Court, New York County

Docket Number: Index No. 650710/2023

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

-----------------------------------------------------------------------------X

ALBERTO JOSEPH SAFRA,

                             Plaintiff,

                  - v -

SNBNY HOLDINGS LIMITED, CARLOS ALBERTO
VIEIRA, CARLOS CESAR BERTACO BOMFIM,
SIMONI PASSOS MORATO, VICKY SAFRA, JACOB
JOSEPH SAFRA, and DAVID JOSEPH SAFRA

                            Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 650710/2023 |
| **MOTION DATE** | 06/26/2023 |
| **MOTION SEQ. NO.** | 005 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 005) 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 99, 100, 101, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132
were read on this motion to/for                        DISMISSAL              .

       Plaintiff Alberto Joseph Safra (Alberto) brings this action against defendants SNBNY Holdings Limited (SNBNY), Carlos Alberto Viera (Viera), Carlos Cesar Bertaco Bomfim (Bomfim), Simoni Passos Morato (Morato, and together with Viera and Bomfim, the Director Defendants), Vicky Safra (Vicky), Jacob Joseph Safra (Jacob), and David Joseph Safra (David, and together with Vicky and Jacob, the Family Defendants) (collectively, defendants), asserting claims for breach of SNBNY's Articles of Association (the Articles), tortious interference with contractual rights, undue influence, unfair prejudice under Gibraltar law, breach of fiduciary duties, and rescission of certain transactions decreasing Alberto's holdings in SNBNY (NYSCEF # 2 – compl or the complaint). Presently before the court is defendants' motion to dismiss the complaint pursuant to CPLR 3211(a)(1), (a)(7), and (a)(8), CPLR 327(a), CPLR 1001, and/or CPLR 3016(b) (NYSCEF # 65). For the following reasons, defendants' motion to dismiss is granted.

## Background[1]

       This action involves a thorny inter-family dispute concerning the ownership and governance of SNBNY, a holding company that owns Safra National Bank of New York (SNB), a nationally charted United States bank headquartered in New

---

[1] The following facts, which are accepted as true solely for purpose of this motion, are drawn from the complaint, as well as the affirmations and exhibits submitted in connection with the motion.

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

                                   **Page 1 of 18**

York (compl ¶¶ 1-7, 18, 38, 49). Both SNBNY and SNB are part of a global portfolio of finance, real estate, and agricultural assets held by the Safra Group, an entity formerly headed and controlled by the late Joseph Yacoub Safra (Joseph) (*id.* ¶¶ 48-50).[2] Alberto, David, Jacob, and Esther Safra Dayan (Esther) are Joseph's children. The four children, together Joseph's widow, Vicky, are the heirs to the Safra Group's assets (*see id.* ¶¶ 19, 48).

Given the extent and prominence of their international interests, the Safra family prepared a comprehensive plan for Joseph's estate (compl ¶ 51). As part of that estate plan, 28% of equity interests in Class B shares of SNBNY were to be distributed to each of Alberto, David, and Jacob, while 16% of equity interests were to be distributed to Esther (*id.* ¶¶ 19, 52, 71). Joseph in turn relied on these proportions in December 2018 when he donated 100,000,000 Class B shares to his children (*id.* ¶ 53). Following this distribution, Joseph owned 613 Class A shares of SNBNY; Alberto, David, and Jacob each owned 28,000,000 Class B shares; and Esther owned 16,000,000 Class B shares (*id.* ¶¶ 11, 53, 71).

*Defendants' Dilution of Alberto's Shares in the Safra Group's Assets*

In 2006, Alberto joined the executive management of Banco Safra S.A. (Banco Safra), a Brazilian commercial bank, eventually becoming a member of Banco Safra's Board of Directors in 2010 (compl ¶¶ 20, 62). But when David joined the Banco Safra's management in 2008, issues between Alberto and his family began to emerge (*see id.*). Specifically, David embarked on a campaign to gain power at Banco Safra, which, in turn, undermined the bank's working environment, increased its costs, and depreciated its synergies, coordination, and administrative efficiencies (*see id.*). David's actions resulted in substantial professional and personal disagreements with Alberto due to diverging views on the bank's business, management, and strategy (*id.*). This resulted in Alberto eventually leaving his position at Banco Safra and founding an asset management firm, ASA Investments (*id.* ¶¶ 21, 62).

Normally, Joseph would have been called upon to resolve this type of business disagreement amongst siblings (*see* compl ¶ 62). But beginning in the latter half of 2019, Joseph's health significantly deteriorated (*id.* ¶¶ 15, 21, 54-57, 61). Taking advantage of this situation, David enlisted Jacob's assistance, and, with Vicky's apparent knowledge, the two engaged a concerted effort to influence Joseph to reduce Alberto's share of the Safra family assets to their direct benefit (*see id.* ¶¶ 21-22, 62-64).

The first part of the Family Defendants' scheme involved obscuring the extent of Joseph's health decline (compl ¶ 23). For example, on November 18, 2019, without informing Alberto, the Family Defendants hired Professor Robert Howard,

---

[2] Safra Group assets include SNBNY, Banco Safra S.A., JS International Holding Limited, and Andromeda Global Strategy Fund Limited (compl ¶ 49).

[* 2]

a Professor of Old Age Psychiatry at University College London, to examine Joseph in Geneva, Switzerland (*id.* ¶¶ 58, 60). Alberto alleges that the Family Defendants secretly hand-picked Professor Howard to issue a report claiming that Joseph had sufficient mental capacity in aid of their efforts to make significant alterations to his estate planning (*id.*). At the same time, the Family Defendants attempted to restrict Alberto from visiting his father and removed him from family communications in which Joseph's health and mental capacity were discussed (*see id.* ¶¶ 24, 57, 61, 63, 89). By obfuscating Joseph's situation, the Family Defendants were able to then influence Joseph without Alberto's knowledge (*see id.* ¶¶ 23, 26-27, 63-65, 87).

The second part of the Family Defendants' campaign involved having Joseph carry out a series of transactions that resulted in the dilution of Alberto's shareholder interests in SNBNY (the Dilution Events) (compl ¶¶ 23, 66-73). The foundation of the Dilution Events began in the fourth quarter of 2019 (*see id.* ¶¶ 14-15, 66). Under Gibraltar law, SNBNY was required to have sufficient profits to support a capitalization event and the issuance of new shares to Joseph (*id.* ¶ 76). Accordingly, in November 2019, SNBNY allegedly switched, without explanation, from the US GAAP accounting standard to the International Financial Reporting Standards when preparing its financial statements, and this change became retroactively effective as of January 1, 2019 (*id.* ¶ 67). This change allowed SNBNY to report a jump in income in 2019 of $872,116,000, which, in turn, increased SNBNY's total equity to $1,674,571,000 (*see id.* ¶¶ 14, 67-68, 72, 78). Alberto alleges, upon information and belief, that these "write ups" were ultimately taken to artificially create profits and justify capitalizing new shares (*id.* ¶ 69).[3]

Relying on SNBNY's updated 2019 financial statements, the Family Defendants then influenced Joseph and the Director Defendants to pass a series of resolutions that increased David and Jacob's shares in SNBNY while decreasing Alberto's shares (*see* compl. ¶¶ 9, 12, 69, 72, 78-80). Specifically, on December 4, 2019, Joseph, who was in New York for medical treatment, approved (by special resolution) new Articles authorizing SNBNY to increase its share capital (*see id.* ¶ 72 [ii]). That same day, Joseph allegedly passed a special resolution by which SNBNY's share capital increased from $100,000,613 (based on 613 Class A shares and 100,000,000 Class B shares) to $300,002,000 (based on 2000 Class A shares and 300,000,000 Class B shares) through the creation of 1,387 new Class A shares and 200,000,000 new Class B shares (*id.* ¶ 72 [iii]). Also on that same day, by a written resolution that was proposed and recommended by the Director Defendants, $868,212,382.01 of SNBNY's reserves and profits were capitalized (*id.* ¶¶ 9, 12, 69, 72 [iv]). This resulted in the issuance of 660 new Class A shares and 107,665,100 new Class B shares to Joseph (*id.* ¶ 72 [iv]). Finally, Joseph transferred his

---

[3] Alberto corroborates his belief by pointing to the fact that, in 2020, following the Dilution Events, SNBNY wrote down SNB's book value, leading to a negative income of $325,247,893 (compl ¶ 79). As explained, this "write down" occurred even though SNB had increased its income over 2019 (*id.*).

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

**Page 3 of 18**

3 of 18

[* 3]

107,665,100 newly issued Class B shares solely to Jacob and David in equal shares for no apparent consideration (*id.* ¶ 72 [v]). Upon completion of the Dilution Events, Alberto's Class B Share holdings were reduced from 28% to 13.47%, while David and Jacob's holdings both increased (*see id.* ¶¶ 13, 73).[4]

According to Alberto, Joseph lacked the capacity to understand, plan, or carry out the sophisticated corporate transactions involved in the Dilution Events (compl ¶¶ 5, 12, 15, 70). In support, Alberto identifies certain irregularities in these special resolutions (*id.* ¶¶ 3, 77, 80). Despite these irregularities, Alberto avers, each of these resolutions were recommended by the Director Defendants (*id.* ¶ 70).

### *Alberto's Discovery of the Dilution Events and Joseph's Passing*

On January 13, 2020, Alberto texted his mother to ask whether something had been done regarding his interest in the Safra family businesses (compl ¶ 90). The next day, Alberto received a letter, back-dated January 6, 2020, which was allegedly written and signed by Joseph (*id.*). The letter expressed that Joseph was hurt by Alberto's decision to leave Banco Safra's management, but it made no mention of any dilution of Alberto's interest (*id.*). Alberto responded to the letter by indicating his desire to speak with Joseph to resolve any issues between the two (*id.* ¶ 91). Despite protests from the Family Defendants, Alberto visited Joseph in Geneva in early 2020 (*id.*). Alberto alleges that Joseph seemed unaware of the Dilution Events and did not display any of the sentiments raised in the January 6, 2020, letter (*id.*).

Joseph passed away on December 10, 2020 (compl ¶¶ 25, 92). Six months later, in June 2021, Alberto learned that his shares had been diluted and the extent of the dilution (*id.* ¶ 88). Alberto had not previously received notice of any of the Dilution Events, or even confirmation of any changes to his Class B share holdings (*id.* ¶ 85). Nor has he received any purported approvals by the Director Defendants that were required to carry out the Dilution Events (*id.*).

### *The Present Lawsuit and Defendants' Challenge to Personal Jurisdiction*

Alberto commenced this action on February 6, 2023. This lawsuits represents just one of several proceedings across the globe challenging Joseph's estate administration and Alberto's dilution of interests in the Safra family businesses (compl ¶¶ 7, 28; *see also* NYSCEF # 79 ¶¶ 6-18). In this action, Alberto seeks to set aside, cancel, or rescind the transactions impacting his interest in SNBNY based on Joseph's alleged lack of mental capacity and incompetence, and he also asserts

---

[4] After the initial transfer in 2019, David and Jacob's SNBNY share holdings were each 39.4%. Then, on May 5, 2020, David and Jacob each transferred 8,613,208 of their Class B shares to Esther, which returned her to her prior level of Class B share holdings (compl ¶¶ 75, 86). This resulted in each of David and Jacob's Class B share holdings dropping to 35.26% (*id.*).

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

**Page 4 of 18**

claims for breach of the Articles, undue influence, unfair prejudice under Gibraltar law, and breach of fiduciary duties (see compl ¶¶ 127-182).[5]

Alberto broadly contends that this action concern "business interests located in New York, conduct in New York, and harm in New York" (compl ¶ 8). Alberto first focuses on SNBNY, alleging that the court has general jurisdiction over the company because, although incorporated in Gibraltar, its principal place of business is in New York (id. ¶ 38). Alberto further avers that SNBNY has extensive contacts with New York and limited contacts with Gibraltar, citing the fact that (1) SNBNY's principal purpose as a holding company is to invest in common stock of SNB, (2) SNBNY is subject to regulation by the Federal Reserve in New York, (3) all three of SNBNY's directors have business offices located in SNB's headquarters, and (4) SNBNY is essentially managed and operated in New York (id. ¶ 39). In any event, Alberto also avers, this court has personal jurisdiction over SNBNY because, among other things, (i) SNBNY conducts nearly all its business through SNB and (ii) alterations to SNBNY's capital structure were initiated through shareholder resolutions executed in New York under the alleged influence and/or approval of the Family Defendants and the Director Defendants (id. ¶ 40).

Alberto next turns to the court's alleged jurisdiction over the Director Defendants, contending that all three work in New York and two of the three maintain residences in New York (compl ¶ 41). In so alleging, Alberto relies on the fact that the Director Defendants maintain offices, and engage in business, in New York by virtue of their positions within SNB (id.). Alberto further states that the court independently has jurisdiction over the Director Defendants because his claims arise out of their transactions in New York (id. ¶ 42). Specifically, he avers, Director Defendants were likely in New York when they purportedly approved Joseph's resolutions diluting Alberto's SNBNY interests (id.).[6]

Alberto's final set of jurisdictional allegations relate to the Family Defendants. Alberto alleges that the court has personal jurisdiction over Jacob and Vicky because Jacob maintains a residence in New York and serves as the chair of SNB, while Vicky maintains a residence in New York where she regularly spends time (compl ¶ 43). Alberto further alleges that the court has jurisdiction over all the

_____

[5] Alberto also brings causes of actions based on defendants' alleged failure to recognize Alberto's nomination to SNBNY's board of directors (compl. ¶¶ 104-126). As alleged, on June 7, 2021, June 25, 2021, and March 2022, Alberto sent letters to SNBNY and the Family Defendants to exercise his right to appoint a director pursuant to Article 61(a) of the Articles (id. ¶¶ 93-94). The Family Defendants, however, purportedly directed SNBNY not to recognize Alberto's director appointee, and on July 2, 2021, SNBNY sent a letter refusing to recognize Alberto's appointment until approved by the Federal Reserve (id. ¶ 95). Now, in connection with their motion, defendants represent that, in the months since this action was commenced, Alberto's nomination has been appointed with immediate effect (see NYSCEF # 130 ¶ 6; NYSCEF # 131). Based on defendants' account, these claims in the complaint appear to be moot.

[6] Alberto also alleges that the denial of his board appointment was taken by, or done with the knowledge of, the Director Defendants when they were likely in New York (compl ¶ 42).

650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL
Motion No. 005

Page 5 of 18

5 of 18

Family Defendants because they took advantage of Joseph's physical and mental state while he was in New York, explaining that Vicky was with Joseph at the time and David and Jacob were "both aware of his medical condition" and were present in New York with Joseph at certain points in December 2019 (*id.* ¶ 44). Alberto alternatively contends that, because SNBNY's principal place of business is alleged to be in New York, personal jurisdiction exists over the Family Defendants because his injuries occurred in New York (*id.* ¶ 45).

Defendants, in response, contest personal jurisdiction over SNBNY, the Family Defendants, and defendants Vieira and Bomfim (together, the Non-Resident Directors) (NYSCEF # 89 – MOL at 8-31; NYSCEF # 126 – Reply at 15-24). As to SNBNY, defendants offer the affirmation of Liam Roche, the director of SNBNY's company secretary, Line Secretaries Limited (NYSCEF # 72 – Roche aff ¶¶ 5-6). Roche contends that SNBNY has its principal place of business in Gibraltar, not New York, and he offers several fact to support his position (*see id.* ¶¶ 4-10). For instance, based on an inspection SNBNY's statutory and minute books maintained in Gibraltar, Roche affirms that SNBNY's sole business is managing the shares it holds, and it employs Gibraltar-based professional firms to provide auditing and legal services and representation in corporate matters (*id.* ¶¶ 5, 7-8). Roche further explains that SNBNY does not generally hold in-person board meetings; rather, meetings are held telephonically and decisions validly made by written resolution signed in whatever place SNBNY's directors are located at the time (*id.* ¶ 10). Roche then affirms, more generally, that SNBNY's corporate policies implicating the allotment and issuance of shares in SNBNY, as well as the rights and restrictions attaching to such shares, are drafted and recorded in Gibraltar (*id.* ¶ 9). In support, Roche notes that he signed and submitted a "Return of Shares Transfer" in Gibraltar to register Joseph's transfer with the Registrar of Companies in Gibraltar (*see id.* ¶ 16; NYSCEF # 78).

To further challenge personal jurisdiction over SNBNY, defendants also offer the affirmation of Bomfim who reiterates that SNBNY is a Gibraltar holding company for its primary asset, Safra New York Corporation (SNYC) (NYSCEF # 81 – Bomfim aff ¶ 5). Bomfim goes on to explain that SNBNY has no office in New York and has no employees in New York (*id.* ¶¶ 11-12). He also reiterates that SNBNY's directors' meetings are held telephonically and any resulting board resolutions are generally drafted in Gibraltar (*see id.* ¶¶ 14-15).

Defendants next turn to the court's alleged jurisdiction over the Non-Resident Directors, offering the affirmations of Bomfim and Vieira to support their position. Vieira affirms that he is a citizen of Brazil and maintains his primary business address in São Paulo, Brazil at Banco Safra (NYSCEF # 82 – Vieira aff ¶¶ 5-6, 8). Although he acknowledges owning an apartment in New York, he represents that he only used this apartment for 116 days in 2019 and generally uses it less than 90 days per year (*id.* ¶ 7). Vieira further affirms that, other than his duties as a director of SNB and other Safra Group-affiliated entities, he does not

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

Page 6 of 18

[* 6]

conduct any business activities in New York (*id.* ¶ 9). Vieira goes on to explain that when Joseph signed the December 4, 2019, shareholder resolutions, and when Vieira signed the December 11, 2019, board resolution approving the capitalization of SNBNY and the issuance of new Class A and Class B shares, he was in Brazil (*id.* ¶¶ 11-12). Vieira, however, acknowledges that he was in New York when he signed the December 19, 2019, board resolution transferring Josephs Class B shares to David and Jacob (*id.* ¶ 13).

For his part, Bomfim explains that he is a citizen of the United States and Brazil and is a resident of New Jersey (Bomfim aff ¶ 8). Bomfim indicates that he owns an apartment in New York City that he rents to a tenant, and he also owns an apartment in Buffalo, New York, that he rents to his son (*id.* ¶ 9). Bomfim acknowledges that he has an office in SNB in New York, but that, other than his duties as an officer of SNB and a director of some other Safra Group-affiliated entities, he does not conduct any business activities in New York (*id.* ¶¶ 6, 10). And regarding the Dilution Events alleged in the complaint, Bomfim affirms that he was not present when Joseph signed the shareholder resolutions on December 4, 2019, but he was in New York when he signed the December 11 and December 19, 2019, board resolutions (*id.* ¶¶ 16-18).

Finally, defendants target Alberto's jurisdictional allegations concerning the Family Defendants by submitting affirmations from each of Vicky, David, and Jacob, who all affirm that they are citizens of Brazil, Greece, and Spain, and not the United States (NYSCEF # 83 – David aff ¶ 3; NYSCEF # 85 – Jacob aff ¶ 3; NYSCEF # 87 – Vicky aff ¶ 3). David maintains his primary residence in São Paulo, Brazil; Jacob maintains his primary residence in Switzerland; and Vicky maintains her primary residence in Switzerland (David aff ¶ 4; Jacob aff ¶ 4; Vicky aff ¶ 4). David occasionally visits but does not maintain a residence in New York; Jacob owns residential property in New York but only spends, at most, 20 days at that property during a typical year; and Vicky rents an apartment in New York but only spends, at most, 30 days per year in that apartment (*see* David aff ¶ 4; Jacob aff ¶ 4; Vicky aff ¶ 4). Addressing the relevant events in Alberto's complaint, David affirms that he was New York to visit his father on December 8, 2019, and he left on December 11, 2019 (David aff ¶ 5). Jacob, in turn, affirms that he was in New York on December 5, 2019, and he left New York on December 14, 2019 (Jacob aff ¶ 5). Finally, Vicky states that she spent more time than usual in New York in 2019 due to Joseph's health issues, and that she was in New York with Joseph for medical reasons from December 2, 2019, to January 16, 2020 (Vicky aff ¶ 5).

## Legal Standard

CPLR 3211(a)(8) provides that a party may move to dismiss one or more causes of action on the ground that the court lacks personal jurisdiction over defendants (CPLR 3211 [a][8]). On such a motion, the court is required to accept as true allegations set forth in the complaint and accord plaintiff the benefit of every

650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL
Motion No. 005

Page 7 of 18

possible favorable inference (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *Lawati v Montague Morgan Slade Ltd.*, 102 AD3d 427, 428 [1st Dept 2013]; *Whitcraft v Runyon*, 123 AD3d 811, 812 [2d Dept 2014]). Plaintiff nevertheless bears the "burden of presenting sufficient evidence, through affidavits and relevant documents, to demonstrate jurisdiction" (*Coast to Coast Energy, Inc. v Gasarch*, 149 AD3d 485, 486 [1st Dept. 2017]). Although a plaintiff need not conclusively establish that there is personal jurisdiction in defending against a motion to dismiss, he or she must make at least a "sufficient start" in demonstrating its existence (*see James v iFlex Inc.*, 185 AD3d 22, 29-30 [1st Dept 2020] [explaining that plaintiff "need only make a 'sufficient start' in demonstrating, prima facie, the existence of personal jurisdiction"]). Conclusory assertions of jurisdiction will not suffice (*see Gasarch*, 149 AD3d at 487 [rejecting "vague, conclusory and unsubstantiated" allegations offered to support long arm jurisdiction]; *Cotia (USA) Ltd. v Lynn Steel Corp.*, 134 AD3d 483, 484 [1st Dept 2015] ["Plaintiff has offered nothing but conclusory assertions to support long-arm jurisdiction under CPLR 302(a)(1)"]).

## Discussion

Defendants primarily move to dismiss the complaint on the grounds that, except as to defendant Morato (who resides in New York), the court lacks a basis to exercise either general or specific personal jurisdiction (MOL at 8-31; Reply at 15-24). Defendants first argue that the court lacks general or specific jurisdiction over SNBNY because it is a holding company incorporated in Gibraltar with its principal place of business in Gibraltar, and none of Alberto's claims arise out of any transaction or activities conducted by it in New York (*see* MOL at 10-17; Reply at 15-19). Regarding the Family Defendants, defendants contend, the complaint fails to plead either general or specific jurisdiction because none of them maintain their primary residences in New York, none of them have had "extensive contacts" with the state, and none of them engaged in wrongful conduct within the state or caused injury within the state (MOL at 17-26; Reply at 20-24). As for the Non-Resident Directors, defendants aver that the court lacks either general or specific jurisdiction because neither of them are domiciled in New York or engaged in extensive business activities in the state, and none of Alberto's claims arise out of any of the directors' transactions of business in New York (MOL at 26-28; Reply at 19-20).[7]

Alberto counters that he has made a prima facie showing of personal jurisdiction over all defendants (NYSCEF # 114 – Opp at 22-30). Alberto first contends that he has sufficiently demonstrated that the court can exercise both general and specific jurisdiction over SNBNY based on his allegations that its principal place of business is in New York and that the relevant transactions at

---

[7] Defendants also move to dismiss on the grounds of *forum non conveniens* and failure to state a claim (*see* MOL at 31-50). Because Alberto has failed to establish personal jurisdiction over SNBNY, the Family Defendants, and the Non-Resident Directors, the court does not reach these alternative bases for dismissal.

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

**Page 8 of 18**

issue in the complaint took place in New York (*id.* at 22-27). He further contends that he has sufficiently established that the court may exercise specific jurisdiction over both the Family Defendants and the Non-Resident Directors (*id.* at 27-30). As to the Family Defendants, Alberto avers that the court may exercise jurisdiction because they were in New York when Joseph and SNBNY carried out the Dilution Events, and they otherwise caused Alberto injury in New York (*id.* at 27-28). And as to the Non-Resident Directors, Alberto argues that his claims arise out of their transaction of business in New York (*id.* at 29-30).

The court addresses the parties' contentions below.

## I. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### A. General Jurisdiction under CPLR 301

Although he alleges in the complaint that the court has general jurisdiction over all defendants (*see* compl ¶ 41), Alberto's general jurisdiction arguments in his opposition focus solely on SNBNY (*see* Opp at 22-30). Alberto contends that the court may exercise general jurisdiction over SNBNY on the grounds that its decisions are made in New York and thus its principal place of business is here (*id.* at 22). Specifically, Alberto argues, SNBNY's decisions originate in New York, not Gibraltar, because its three directors exercise control over SNBNY from SNB in Manhattan, and hence, SNBNY's decisions are made in New York (*id.* at 22-24).

For a court to exercise general jurisdiction over a defendant, a defendant must generally either be domiciled or have its principal place of business in New York (*Brocco v E. Metal Recycling Term. LLC*, 211 AD3d 628, 628 [1st Dept 2022]). To establish that a company's principal place of business is in New York, plaintiff must demonstrate that a company's "nerve center" is in New York (*see Robins v Procure Treatment Ctrs., Inc.*, 179 AD3d 412, 414 [1st Dept 2020]). A company's "nerve center" is the place where "the majority of its executive and administrative functions are performed" (*Hertz Corp. v Friend*, 559 US 77, 82 [2010]). There are also "exceptional case[s]" where a court may exercise general jurisdiction over a foreign company because its "ties to New York are so continuous and systematic as to render it essentially 'at home' in New York" (*KPP II CCT LLC v Douglas Dev. Corp.*, 222 AD3d 408, 408 [1st Dept 2023]; *see also Daimler AG v Bauman*, 571 US 117, 139 [2014]).

Here, to establish general jurisdiction over SNBNY, Alberto alleges that SNBNY's principal place of business is in New York (compl ¶ 38). But defendants' sworn submissions establish that, in addition to being incorporated in Gibraltar, SNBNY's principal place of business is also in Gibraltar. As an initial matter, as affirmed by both Roche and Bomfim, SNBNY is merely a holding company whose only asset, SNYC, is also a holding company with interests in four other assets (including SNB) (*see* Roche aff ¶ 4; Bomfim aff ¶¶ 4-5). And as a holding company,

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

Page 9 of 18

SNBNY's only business activity is managing the shares it holds, with its administrative and corporate affairs being handled and maintained in Gibraltar (*see* Roche aff ¶ 4-9, 16; *see also* NYSCEF # 78). Gibraltar also happens to be the place in which SNBNY's written shareholder and board resolutions are drafted and prepared, and, as relevant here, where changes to the corporate register are recorded and pertinent documents filed (*see* Roche aff ¶¶ 9, 16; Bomfim aff ¶¶ 13-15; *see also* NYSCEF # 74 at 4; NYSCEF # 78) By contrast, SNBNY has no office or employees in New York, and it does not conduct any in-person meetings in New York (Roche ¶ 10; Bomfim aff ¶¶ 11-12, 14; Vieira aff ¶¶ 11-12). Viewing these facts together, the record supports a conclusion that, although SNBNY's operations in Gibraltar may not necessarily be substantial in scope, it is Gibraltar, not New York, where the majority of SNBNY's executive and administrative functions are performed and where its corporate policies originate (*see Utopia Studios, Ltd. v Earth Tech, Inc.*, 607 F Supp2d 443, 445-446 [ED NY 2009] [explaining that, for purposes of establishing a company's principal place of business "the salient question [is] where the company's policies originate"]).[8]

To avoid this conclusion, Alberto largely relies on SNB's operations in New York to impute jurisdiction over SNBNY (*see* compl ¶¶ 38-39). Such reliance is misplaced. It is true that in certain limited circumstances, CPLR 301 jurisdiction may be established by the acts of related entities to the named defendant (*see Delagi v Volkswagenwerk AG of Wolfsburg, Germany*, 29 NY2d 426, 432 [1972]). But the mere existence of a parent-subsidiary relationship, alone, does not confer jurisdiction over a company (*see FIMBank P.L.C. v Woori Fin. Holdings Co. Ltd.*, 104 AD3d 602, 602-603 [1st Dept 2013] [rejecting that defendant was subject to personal jurisdiction based on ownership of subsidiary]; *Porter v LSB Indus., Inc.*, 192 Ad2d 205, 213 [4th Dept 1993] [explaining that "[a] finding of agency for jurisdictional purposes will not be inferred from the mere existence of a parent-subsidiary relationship"]; *see also Cortlandt St. Recovery Corp. v Bonderman*, 73 Misc3d 1217[A], at *7 [Sup Ct, NY County, 2021], *mod on other grounds*, 215 AD3d 446 [1st Dept 2023] ["the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation"]). Rather, the parent's "control over the subsidiary's activities . . . must be so complete that the subsidiary is, in fact, merely a department of the parent" (*Delagi*, 29 NY2d at 432; *accord Blount v Bovis Lend Lease LMB, Inc.*, 49 AD3d 293, 294 [1st Dept 2008]). To determine if a subsidiary is a "mere department" of its parent, courts consider the following factors: (1) "common ownership"; (2) "financial dependency of the subsidiary on the parent"; (3) the "degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to

---

[8] That SNBNY may be regulated by the Federal Reserve by virtue of its interests in SNB does not alter this determination (*cf. Okoroafor v Emirates Airlines*, 195 AD3d 540, 541 [1st Dept 2021] ["registration to do business in New York does not constitute consent to submit to general jurisdiction in New York for causes of action that are unrelated to its affiliation with New York"]; *Advance Realty Assocs. v Krupp*, 636 FSupp 316, 317-318 [SD NY 1986] [registration of several partnerships as broker dealers in New York did not confer general jurisdiction over those entities]).

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

**Page 10 of 18**

observe corporate formalities"; and (4) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent" (*Volkswagenwerk AG. v Beech Aircraft Corp.*, 751 F2d 117, 120-122 [2d Cir 1984]; *accord FIA Leveraged Fund Ltd v Grant Thornton LLP*, 150 AD3d 492, 493 [1st Dept 2017] [relying on the four factor test set out by the Second Circuit in *Beech Aircraft*]).

The crux of Alberto's position is that SNBNY is "at home" in New York because, as he alleges, (1) SNBNY is a holding company whose principal purpose is to invest, through its subsidiary SNYC, in SNB's common stock, and (2) all three of SNBNY's directors maintain offices in New York at SNB's headquarters and therefore must have made decisions about SNBNY in New York (*see* compl ¶ 39; Opp at 22-24). But even accepting these allegations as true, the complaint does not sufficiently allege that SNB is a "mere department" of SNBNY. For instance, beyond identifying common ownership and some financial ties, the complaint does not suggest that SNBNY exerts control over SNB's activities and operations or that these entities have failed to observe corporate formalities. Rather, it is evident that SNBNY, indirectly through SNYC, operates as "nothing more than an investment mechanism," while SNB "conduct[s] business not as [SNBNY's] agent[] but as its investment[]" (*see Gurvey v Cowan, Liebowitz & Latman, PC*, 2009 WL 691056, at *4 [SD NY, Mar. 17, 2009, No. 06 Civ. 1202]; *Gallelli v Crown Imports, LLC*, 701 F Supp 2d 263, 273-274 [ED NY 2010] ["Since the subsidiaries carry out their own businesses, and not the investment business of [parent], the subsidiaries cannot be deemed the agents of [parent]"]; *see also FIA Leveraged Fund*, 150 AD3d at 493 [observing that "since [parent] is a holding company, it is financially dependent on its subsidiaries" rather than vice versa]).

In sum, Alberto has failed to establish or make a sufficient start demonstrating that the court may exercise general jurisdiction over SNBNY. The court next turns to Alberto's specific jurisdiction arguments.[9]

B. Specific Jurisdiction Under CPLR 302

New York's long arm-statute, CPLR 302, provides for three separate bases that a court may exercise specific jurisdiction over a non-domiciliary (CPLR 302 [a]). Preliminarily, under CPLR 302(a)(1), a court may exercise jurisdiction over a non-domiciliary who "transacts any business within the state." The jurisdictional inquiry under CPLR 302(a)(1) involves a "two-pronged analysis" (*Bangladesh Bank v Rizal Commercial Banking Corp.*, –AD3d–, 2024 WL 847976, at *11 [1st Dep Feb. 29, 2024]). "[U]nder the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the

---

[9] To the extent that Alberto maintains that the court may exercise general jurisdiction over the Family Defendants or the Non-Resident Directors (*see* compl ¶¶ 41, 43), that contention fails because none of them maintain New York as their primary place of domicile (*see* Bomfim aff ¶¶ 8-9; Vieira aff ¶¶ 5-8; David aff ¶ 4; Jacob aff ¶ 4; Vicky aff ¶ 4).

[* 11]

claims must arise from the transactions" (*Rushaid v Pictet & Cie*, 28 NY3d 316, 323 [2016]).

The next basis for specific jurisdiction is set forth in CPLR 302(a)(2), which provides that courts may exercise jurisdiction over a non-domiciliary who, in person or through an agent, "commits a tortious act within the state" (CPLR 302 [a] [2]). The mere occurrence of an injury in New York "cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording" (*SOS Capital v Recycling Paper Partners of PA, LLC*, 220 AD3d 25, 33-34 [1st Dept 2023]). For this reason, courts typically require that the defendant be physically present in New York at the time of the tort (*see Pramer S.C.A. v Abaplus Intl. Corp.*, 76 AD3d 89, 95-97 [1st Dept 2010]). This is true "even when the instrument of the tort itself is in New York" (*id.* at 97).

The final basis for specific jurisdiction, as relevant here, is set forth in CPLR 302(a)(3)(ii). To establish jurisdiction under this subsection, a plaintiff must demonstrate that (1) "defendant committed a tortious act outside [New York]," (2) "the cause of action arises from that act," (3) "the act caused injury to a person or property within [New York]," (4) "defendant expected or should reasonably have expected the act to have consequences in [New York]," and (5) "defendant derived substantial revenue from interstate or international commerce" (*LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 214 [2000]; *see also* CPLR 302[a][3][ii]). In New York "the situs of commercial injury is where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred" (*Deutsche Bank AG v Vik*, 163 AD3d 414, 415 [1st Dept 2018]; *accord Uzan v Telsim Mobil Telekomunikasyon Hizmetleri A.S.*, 51 AD3d 476, 478 [1st Dept 2008] ["the situs of the injury for long-arm purposes is where the event giving rise to the injury occurred, not where the resultant damages occurred"]).

Here, Alberto invokes all three of the above-referenced subsections of CPLR 302 to contend that the court may exercise specific over each of SNBNY, the Non-Resident Directors, and the Family Defendants (Opp at 25-30). The court considers each of Alberto's personal jurisdictional bases in turn.

### 1. Specific Jurisdiction over SNBNY

Alberto argues that the court may exercise specific jurisdiction over SNBNY under CPLR 302(a)(1) because his claims arise out of SNBNY's purported transaction of business in New York, including the planning, execution, and approval of the Dilution Events (Opp at 25-27). There is, however, no indication from the complaint or the parties' submissions that Alberto's claims arise out of any transaction in New York. As explained above, SNBNY is a holding company whose principal purpose is manage the shares it holds through SNYC (*see* Roche aff ¶¶ 4-8; Bomfim aff ¶¶ 4-5, 11-15). As a result, insofar as SNBNY has transacted business in New York, it is solely through its investment activities (*cf. Gallelli*, 701 F Supp

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

**Page 12 of 18**

12 of 18

2d at 272-274). Although Alberto may allege that SNBNY (through acts of other defendants) diluted his shareholder interest, the purported transactions resulting in this alleged dilution were ultimately effectuated in Gibraltar, not New York, and impacted Alberto's shareholder interests as registered in Gibraltar, not New York (*see* compl ¶¶ 9, 12, 66-83; Roche aff ¶¶ 9-16; NYSCEF # 78).[10]

Unable to establish harm flowing for SNBNY's own transaction of business in New York, Alberto again points to SNB's operations in New York to impute jurisdiction over SNBNY (compl ¶ 40). Specifically, Alberto contends that the court has specific jurisdiction over SNBNY because (1) it conducts its business through SNB, and (2) SNBNY's directors work out of SNB's headquarters in New York (*id.*). Alberto's contentions are just as unavailing as they were in the CPLR 301 context. To start, as explained above, "[m]ere ownership by a parent company of a subsidiary that is subject to personal jurisdiction" does not subject the parent to jurisdiction in New York (*see Moreau v RPM, Inc.*, 20 AD3d 456, 457 [2d Dept 2005]). Moreover, this court has already determined that there is no basis to conclude that SNB is a "mere department" of SNBNY in the absence of any control over SNB's activities or failure to observe corporate formalities. Simply stated, nothing in the record suggests that purported jurisdiction arising from SNB's contacts within New York can be imputed on to SNBNY.

At any rate, there are no such allegations in the complaint supporting a conclusion that Alberto's claims arise from any transaction of business by SNB (rather than SNBNY). To assert specific jurisdiction under CPLR 302(a)(1) over a non-domiciliary parent company based on its subsidiary's contacts within New York, a plaintiff must establish that the parent company "knew of and consented to" acts **by the in-state subsidiary** giving rise to plaintiff's cause of action (*see DeCraene v Neuhaus (U.S.A.), Inc.*, 2005 WL 1330761, at *5 [SD NY June 3, 2005, No. 04 Civ. 2876(GEL)], quoting *EFCO Corp. v Nortek*, 205 F3d 1322 [2d Cir 2000]; *see also Gasarch*, 149 AD3d at 486-487 ["[t]o establish that a defendant acted through an agent, a plaintiff must 'convince the court that [the New York actors] engaged in purposeful activities in this State in relation to [the] transaction for the benefit of and with the knowledge and consent of [the defendant] and that [the defendant] exercised some control over [the New York actors]'"]). Here, however, all that the complaint alleges is that, through actions taken by defendants in their capacity as

---

[10] In fact, the only true connection to New York is that Joseph and certain defendants executed shareholder and board resolutions in New York (*see* compl ¶¶ 40, 42; *see also* Bomfim aff ¶¶ 17-18). But this fact is not determinative of whether SNBNY or the Non-Resident Directors transacted business under CPLR 302(a)(1) (*see Presidential Realty Corp v Michael Sq. W.*, 44 NY2d 672, 673-674 [1978] [rejecting personal jurisdiction in the absence of "proof of any contacts with [New York] other than the fact that the modification letter and the agreement were signed in New York"]; *Galgay v Bulletin Co.*, 504 F2d 1062, 1065 & n2 [2d Cir 1974] [holding that the "fact that the contract was executed in New York" was not "determinative" of defendant's "purposeful activity" in New York]; *Yacht Haven USVI LLC v The West Indian Co. Ltd.*, 2022 WL 1555935, at *4 [Sup Ct, NY County, May 16, 2022] ["merely executing a contract in New York is not sufficient to satisfy the transaction-of-business prong of the statute"]).

650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL
Motion No. 005

Page 13 of 18

[* 13]

shareholders and directors of SNBNY, Alberto's shares in SNBNY were diluted to the direct benefit of David and Jacob, and he was later deprived of his right to appoint a director to the SNBNY board (with the latter claim now appearing to be moot). None of these allegations involved actions carried out by, or on behalf of, SNB or its representatives. Alberto's claims consequently lack any "articulable nexus between the business transacted [by SNB] and the cause of action sued upon" by Alberto (*see McGowan v Smith*, 52 NY2d 268, 272-273 [1981]). The court therefore cannot conclude that it may exercise specific jurisdiction over SNBNY under CPLR 302(a)(2) based on SNB's contacts with New York.

In sum, defendants' motion to dismiss Alberto's claims against SNBNY for lack of personal jurisdiction is granted.

### 2. Specific Jurisdiction over Non-Resident Directors

Alberto argues that the court can exercise specific jurisdiction over the Non-Resident Directors under CPLR 302(a)(1) because his claims arise out of their purported transaction of business in New York, including their approval of the Dilution Events (Opp at 29-30). In support of jurisdiction, Alberto alleges that the Non-Resident Directors maintain offices at SNB in New York and were likely in New York when they approved the resolutions diluting Alberto's shares in SNBNY and refused to recognize Alberto's director nominee (*see* compl ¶ 42). The court disagrees.

To reiterate, the alleged transactions underlying Alberto's claims are the increase in share capital, the issuance of new Class B shares to Joseph, and the transfer of those shares to David and Jacob (compl ¶¶ 72-75). Although the relevant resolutions approving these transactions may have been executed and/or approved, in part, in New York (*see* Bomfim aff ¶¶ 16-17; Vieira aff ¶ 15; *but see* Vieira aff ¶¶ 11-12), they were ultimately prepared in Gibraltar and their actual impact on SNBNY's shareholder interests was effectuated in Gibraltar (Roche aff ¶¶ 5, 9, 16; Bomfim aff ¶¶ 13-15). Thus, even assuming the Non-Resident Directors somehow did avail themselves to New York by virtue of maintaining offices at SNB, Alberto's claims do not arise from the Non-Resident Directors' alleged transactions within the state.[11]

---

[11] Neither *MoneyGram Payment Sys., Inc. v Consorcio Oriental, S.A.* (2007 WL 1489806 [SD NY May 21, 2007, No. 05 Civ. 10773(RMB)]) nor *Kravitz v Binda* (2020 WL 927534 [SD NY Jan. 21, 2020, No. 17-CV-07461 (ALC)(SN)]) warrant a different conclusion. For example, in *MoneyGram*, the court concluded that it could exercise long-arm jurisdiction over a company's shareholder where the company's actions underlying plaintiff's claim could be imputed to the shareholder, and the company had transacted business in New York by entering into an agreement with a New York corporation that included New York forum-selection and choice-of-law clauses (2007 WL 1489806 at * 5). Meanwhile, in *Kravitz*, defendants' communications, travels, and business decisions, including the drafting of board resolutions in New York, were "part of a larger business plan purposefully directed at New York" (2020 WL 927534 at *7). Here, by contrast, the transactions underlying Alberto's

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

**Page 14 of 18**

14 of 18

Defendants' motion to dismiss Alberto's claims against the Non-Resident Directors for lack of personal jurisdiction is granted.[12]

### 3. Specific Jurisdiction over Family Defendants

Alberto argues that the court can exercise specific jurisdiction over the Family Defendants because they were either in New York when Joseph executed the resolutions diluting Alberto's interest in SNBNY or engaged in conduct that caused an injury that occurred in New York (Opp at 27-29). Neither basis for jurisdiction is availing.

Alberto first invokes CPLR 302(a)(2) by alleging that the Family Defendants took advantage of Joseph's deteriorated state in New York (compl ¶ 44). Specifically, Alberto alleges that Vicky was with Joseph at the time of the Dilution Event, and David and Jacob were "both aware" of his condition and in New York with Joseph on certain dates in December in relation to his medical issues (*id.*). Nothing in the complaint, however, supports the court exercising personal jurisdiction pursuant to CPLR 302(a)(2). To start, although Vicky was in New York at the time Joseph purportedly executed the shareholder resolutions diluting Alberto's interests on December 4, 2019 (Vicky aff ¶ 5), there is no meaningful dispute that both Jacob and David were out of the state at the time (*see* Jacob aff ¶ 5; David aff ¶ 5). Meanwhile, beyond a certain conclusory allegations that they "tortiously took advantage" of Joseph and were aware of his medical conditions during a New York visit (*see* compl ¶ 44), the complaint fails allege what, if anything, the Family Defendants did with Joseph while in New York (*cf. id.* ¶¶ 58-60 [alleging that the Family Defendants hired Dr. Howard to examine Joseph in Geneva, Switzerland]; *id.* ¶ 62 [alleging that David "sought to assert influence over [Joseph]" in connection with the management of Banco Safra in Brazil]). In the absence of any non-conclusory allegations to the contrary, Alberto has failed to make a sufficient start establishing specific jurisdiction over the Family Defendants under CPLR 302(a)(2).

Alberto next invokes specific jurisdiction over the Family Defendants pursuant to CPLR 302(a)(3)(ii), alleging that, even if the Family Defendants were not in New York when they caused Joseph to dilute Alberto's shareholder interests in SNBNY, Alberto's dilution of his shareholder interests occurred in New York (Opp at 28-29; *see also* compl ¶ 45). This basis for jurisdiction, however, fails for largely the same reasons previously articulated by the court. To reiterate, the crux

---

claims were implemented outside of New York and impacted his shareholder interests registered in Gibraltar.

[12] The court would reach the same conclusion about jurisdiction over the Non-Resident Directors regarding Alberto's claim that they prevented Alberto from nominating his appointment to the SNBNY board. As certain letters submitted in connection with defendants' motion to dismiss indicate, defendants' alleged failure recognize Alberto's nomination seemingly originated from Gibraltar, not New York (*see* NYSCEF #s 69-71).

650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL
Motion No. 005

Page 15 of 18

15 of 18

of Alberto's allegations is that Joseph, under the undue influence of the Family Defendants, effectuated a transfer of shares to Jacob and David that diluted Alberto's shareholder interests registered in Gibraltar, not New York (*see* compl ¶¶ 66-80). Although the resolutions approving this transaction may have been executed in New York, the actual dilution of shares—including the recording and registration the relevant transfer of shares (*see e.g.* NYSCEF # 78)—was carried out by SNBNY, through its representatives, in Gibraltar. Because the impact of the Dilution Events flowed from Gibraltar, the "situs" of Alberto's injury is not, as Alberto avers, in New York. It is in Gibraltar.[13] A finding of specific jurisdiction under CPLR 302(a)(3) over the Family Defendants, is unwarranted.

In conclusion, defendants' motion to dismiss Alberto's claims against the Family Defendants for lack of personal jurisdiction is granted.

### C. Jurisdictional Discovery is Not Warranted

Alberto argues that if personal jurisdiction is in question, the court should adjourn defendants' motion and permit Alberto to take jurisdictional discovery. In support, Alberto submits the Affirmation of Jonathan B. Oblak setting out purported facts that "may exist to support jurisdictional discovery" (NYSCEF #104 ¶¶ 3-9).

CPLR 3211(d) provides that, "[s]hould it appear from affidavits submitted in opposition to a motion made under [CPLR 3211(8)] that facts essential to justify opposition may exist but cannot then be stated," then the court may direct that the parties engage in jurisdictional discovery. In order to obtain jurisdictional discovery, "plaintiff[] must demonstrate the possible existence of essential jurisdictional facts that are not yet known" (*Copp v Ramirez*, 62 AD3d 23, 31-32 [1st Dept 2009]). This requires that plaintiff "offer 'some tangible evidence which would constitute a 'sufficient start' in showing that jurisdiction could exist, thereby demonstrating that its assertion that a jurisdictional predicate exists is not frivolous'" (*SNS Bank, N.V. v Citibank, N.A.*, 7 AD3d 352, 354 [1st Dept 2004], quoting *Mandel v Busch Entertainment Corp.*, 215 AD2d 455, 455 [2d Dept 1995]).

Here, for the reasons explained above, Alberto has failed to make a "sufficient start" indicating that jurisdiction could exist over SNBNY, the Family Defendants, or the Non-Resident Directors. Furthermore, Alberto has failed to sufficiently indicate that facts exist that the court might deem essential to Alberto's opposition to defendants' motion to dismiss. At most, citing to allegations and arguments that this court has already considered, Alberto offers conjecture as to what he may find if afforded an opportunity to take jurisdictional discovery (*see* NYSCEF # 104 ¶¶ 3-9).

---

[13] The same conclusion would be warranted insofar Alberto's tortious interference claim related to the Family Defendants' alleged failure to recognize his board nominee is not mooted. Simply put, there is no indication from the complaint or the parties' submissions that the situs of injury arising from this claim has any connection to New York.

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

But more than conjecture is needed to support a conclusion that for jurisdictional discovery is warranted (*see Warck-Meister v Diana Lowenstein Fine Arts*, 7 AD3d 351, 352 [1st Dept 2004] [holding that "discovery was not warranted since plaintiff failed to advance any non-conjectural ground to believe that the disclosure sought would be productive of evidence supporting an exercise of jurisdiction over defendants"]). Alberto's request for jurisdictional discovery is denied.

## II.    Defendants' Motion to Dismiss Action in the Absence of a Necessary Party

With SNBNY, the Family Defendants, and the Non-Resident Directors dismissed from the case for lack of personal jurisdiction, the only remaining defendant in this action is defendant Morato. Defendants argue that Alberto's complaint must now be dismissed because, in the absence of, *inter alia*, SNBNY, complete relief cannot be afforded (*see* MOL at 29; Reply at 26). Under CPLR 3211(a)(10), a party may move to dismiss on the basis that "the court should not proceed in the absence of" a necessary party (CPLR 3211 [a] [10]). CPLR 1001(a), in turn, defines necessary parties as either "[p]ersons [or entities] who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or [persons or entities] who might be inequitably affected by a judgment in the action" (CPLR 1001 [a]; *Matter of 27th St. Block Assn. v Dormitory Auth. of State of N.Y.*, 302 AD2d 155, 160 [1st Dept 2002]). In assessing the issue of complete relief, courts will consider whether the relief sought against a defendant relies on, in part or in whole, an adjudication of the liability of and/or harm caused by the nonparty sought to be joined (*see Almah LLC v AIG Empl. Servs., Inc.*, 159 AD3d 532, 532 [1st Dept 2018] [holding that complete relief could be accorded "between plaintiff and [defendant], without joining [nonparty]" because "[defendant's] liability, if any, will be limited to any damage that it caused during its tenancy; it will not be liable for damage that [nonparty] may have caused during its earlier tenancy"]).

Here, Alberto's claims all relate to (1) the validity of share issued and maintained by SNBNY, (2) amendments to SNBNY's Articles, and (3) issues impacting SNBNY's corporate governance and internal affairs (to the extent not mooted) (*see* compl ¶¶ 104-182). And the relief sought by Alberto necessarily requires an adjudication of SNBNY's liability and/or the harm caused by its actions. Accordingly, as Alberto seemingly concedes (*see* Opp at 32), the court cannot afford complete relief without SNBNY, meaning that full dismissal is warranted in the absence of this necessary party.

Consideration of the CPLR 1001(b) factors does not alter this conclusion. Under CPLR 1001(b), if the court lacks jurisdiction over a necessary party, it shall consider the following factors: "(1) whether plaintiff has another remedy if the action is dismissed for nonjoinder; (2) the prejudice which may accrue from nonjoinder to the defendant or to the nonjoined party; (3) whether and by whom prejudice might have been avoided or may in the future be avoided; (4) the

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

Page 17 of 18

feasibility of a protective provision; and (5) whether an effective judgment may be rendered in the absence of the nonjoined person" (*L-3 Communications Corp. v SafeNet, Inc.*, 45 AD3d 1, 10-11 [1st Dept 2007]). Here, these factors largely weigh in favor of dismissal of the entire action in the absence of SNBNY. For example, Alberto has another remedy if this action is dismissed because he would be free to initiate this action in another forum (including in Gibraltar). By contrast, any judgment entered in this action would seemingly be ineffective because the sole remaining defendant, Morato, would not be able to bind SNBNY on any judgment or declaration entered in this action. Furthermore, allowing SNBNY's rights and obligations to be adjudicated in its absence would also be unfairly prejudicial, especially since the heart of this matter pertains to SNBNY's internal affairs, corporate governance, shareholder structure, and share capitalization. And a protective provision would not be able to cure this infirmity.

In sum, SNBNY is a necessary party under CPLR 1001(a). But because the court lacks personal jurisdiction over SNBNY dismissal of the entirety action under CPLR 3211(a)(10) is warranted.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendants' motion to dismiss the complaint in its entirety for lack of personal jurisdiction under CPLR 3211(a)(8) is granted and the complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter judgment accordingly; and it is further

ORDERED that defendants are to serve a copy of this order together with a notice of entry upon plaintiff and the Clerk of the Court within 10 days of this order.

_____03/28/2024_____
DATE

_____
MARGARET A. CHAN, J.S.C.

| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- |
| | [X] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

**650710/2023 SAFRA vs. SNBNY HOLDINGS LIMITED ET AL**
**Motion No. 005**

Page 18 of 18

18 of 18